## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GUY WATSON,                                        Case No. 1:13-cv-105
      Plaintiff,                              Dlott, J.
                                                   Litkovitz, M.J.

      vs.


COMMISSIONER OF                                    **REPORT AND**
SOCIAL SECURITY,                                   **RECOMMENDATION**
      Defendant.


Plaintiff brings this action pursuant to 42 U.S.C. § 1383(c)(3)[1] for judicial review of the final decision of the Commissioner of Social Security (Commissioner) terminating plaintiff's supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum (Doc. 21).

**I. Procedural Background**

Plaintiff began receiving SSI disability benefits when he was a child. The Commissioner conducted a continuing disability review after plaintiff reached age 18. Subsequently, plaintiff's SSI benefits were terminated because the Commissioner found plaintiff was no longer disabled under the disability rules for adults. This finding was affirmed upon plaintiff's request for reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before Administrative Law Judge (ALJ) Robert Flynn. Plaintiff, plaintiff's mother, and a vocational expert (VE) appeared and testified at the ALJ hearing. On October 18, 2011, the ALJ issued a decision upholding the Commissioner's decision to terminate plaintiff's SSI benefits. Plaintiff's

---

[1] Section 1383(c)(3) expressly incorporates the judicial review provisions of 42 U.S.C. § 405(g).

request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

2

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

    **B. The Administrative Law Judge's Findings**

    The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] attained age 18 [in] December . . . 2007, and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained age 18. The [plaintiff] was notified that he was no longer disabled as of May 1, 2008, based on a redetermination of disability under the rules for adults who file new applications.

> 2. Since May 1, 2008, the [plaintiff] has had the following severe impairments: obesity, asthma, diabetes mellitus, hypertension, hyperlipidemia, sleep apnea, tobacco abuse, learning disorder, and attention deficit hyperactivity disorder (20 CFR 416.920(c)).

> 3. Since May 1, 2008, the [plaintiff] did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the [ALJ] finds that since July 31, 2008, the [plaintiff] had the residual functional capacity to perform a range of medium work as defined in 20 CFR 416.967(c), with the following limitations: he can lift up to 50 pounds and frequently lift or carry 25 pounds. He can stand/walk for a total of 6 hours in an 8-hour workday and sit for a total of 6 hours in an 8-hour workday. In addition, he can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl, but never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to poorly ventilated areas, or concentrated exposure to environmental irritants, such as fumes, odors, dust, chemical[s] and gases. He must also avoid all exposure to hazards, such as the exposure to unprotected heights, the use of moving machinery, and commercial driving. Further, the [plaintiff] is limited to work that involves simple, routine, and repetitive tasks; performed in a low stress environment, defined as free of fast-paced production requirements, involving only simple work-related decisions, with few - if any - work place changes, and occasional contact with the public, coworkers and supervisors.

5. The [plaintiff] has no past relevant work (20 CFR 416.965).

6. The [plaintiff] was born [in] December . . . 1989 and is a younger individual age 18-49 (20 CFR 416.963).

7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Since May 1, 2008, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).

10. The [plaintiff]'s disability ended on May 1, 2008, and the [plaintiff] has not become disabled again since that date (20 CFR 416.987(e) and 416.920(g)).

(Tr. 16-24).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

4

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

The medical findings and opinions of record have been adequately summarized in the parties' briefs (Doc. 11 at 2-5, Doc. 17 at 2-6) and will not be repeated here. Where applicable, the Court will identify the medical evidence relevant to its decision. Because plaintiff argues that the ALJ erred only with respect to the evaluation of his mental impairments, the Court's discussion will focus on plaintiff's mental limitations.

5

On appeal, plaintiff argues that: (1) the ALJ erred by failing to find plaintiff meets Listing 12.10(A)(2)(B)(1)-(3) for pervasive developmental disorder; (2) the ALJ erred by rendering an RFC finding that is not supported by substantial evidence; (3) the ALJ erred in assessing plaintiff's credibility; and (4) the ALJ erred by failing to find that plaintiff suffers from the severe impairment of pervasive developmental disorder. Plaintiff also argues that evidence he submitted to the Appeals Council after the ALJ had rendered his decision warrants a remand of this matter under Sentence Six of 42 U.S.C. § 405(g). The Court will consider plaintiff's assignments of error in a different order than plaintiff has presented them.

### 1. New and material evidence

Under 42 U.S.C. § 405(g), plaintiff bears the burden of establishing that a remand for further administrative proceedings is warranted based on the submission of new evidence. *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001). To carry his burden, plaintiff must show that the proposed evidence is both "new" and "material" and that he had "good cause" for failing to introduce the evidence at the administrative proceeding. *Id. See also Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 276 (6th Cir. 2010). "[E]vidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster,* 279 F.3d at 357 (quoting *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)). Evidence is "'material' only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir. 1988)).

The evidence plaintiff submitted to the Appeals Council following the ALJ's decision in this matter consists of the following documents: (1) an adult diagnostic assessment dated May 2011 (Tr. 615-24); (2) the treatment notes of Dr. Silvia Colmenares, M.D., dated July, August

6

and November 2011 (Tr. 606-13); (3) Butler Behavioral Health Services, Inc. medication entries entered by Dr. Colmenares for the period June through November 2011 (Tr. 614); and (4) a letter opinion by Dr. Colmenares dated April 19, 2012, together with Dr. Colmenares' treatment notes from January and April 2012 (Doc. 11-2). Plaintiff argues this evidence is "new" because Dr. Colmenares' treatment notes post-date the ALJ hearing. Plaintiff contends that the evidence is "material" because it establishes Dr. Colmenares as a treating physician, which requires the ALJ to weigh her opinion differently pursuant to 20 C.F.R. § 416.927. (Doc. 21 at 3-4). Plaintiff's counsel argues there is "good cause" for failure to submit the evidence prior to the ALJ hearing because counsel requested all records from Dr. Colmenares before the hearing, the records were provided to the ALJ or the Appeals Council upon receipt, and records that post-date the hearing could not be provided earlier because they were not in existence as of the date of the ALJ hearing.

Insofar as some of the evidence submitted by plaintiff post-dates the ALJ's October 2011 decision, plaintiff has carried his burden to show that remand for consideration of the evidence is warranted pursuant to 42 U.S.C. § 405(g). This evidence was not available prior to issuance of the ALJ's decision and is therefore "new" evidence. *See Foster,* 279 F.3d at 357. The "new" evidence includes Dr. Colmenares' April 19, 2012 letter opinion (Doc. 11-2); Dr. Colmenares' treatment notes dated November 2011 (Tr. 606-07); the November 2011 medication record entries (Tr. 614); and Dr. Colmenares' treatment notes dated January and April 2012 (Doc. 11-2).

Plaintiff has demonstrated there is a reasonable probability the ALJ would have reached a different decision if presented with this new evidence. As explained below, there was no treating mental health provider opinion of record prior to issuance of the ALJ's decision. Dr.

Colmenares, who had examined plaintiff once before the ALJ's decision and issued an opinion in

July 2011 based on that examination (Tr. 589-596), did not establish a treating relationship with

plaintiff until after the ALJ's decision. Had Dr. Colmenares' subsequent treatment notes and

letter opinion been before the ALJ, her opinion may have been entitled to "controlling weight" in

accordance with the treating physician doctrine. *See Gayheart v. Comm'r*, 710 F.3d 365, 376

(6th Cir. 2013); 20 C.F.R. § 416.927(c)(2). Moreover, the post-decision treatment notes provide

additional support for the extreme limitations Dr. Colmenares found in her July 2011 assessment

which was before the ALJ. (*See* Tr. 606, 11/11 treatment note: passively cooperative,

persistently evasive eye-contact, remains non-verbal, does not appear to be responding to internal

stimuli, affect is blunted, insight/judgment is poor; Doc. 11-2, 1/12 treatment note: passively

cooperative, mute, insight/judgment is poor, does not appear to be responding to internal stimuli,

evasive eye contact; *Id.*, 4/12 treatment note: reluctant to come into office but allowed himself to

be guided by mother, wringing hands, guarded, no eye contact, remains selectively mute, affect

is blunted, insight/judgment is poor). These findings, had they been before the ALJ, may have

led the ALJ to conclude that the opinions of the only treating mental health provider, and the

only examining psychiatrist, of record were well-supported and were entitled to the most weight.

Thus, plaintiff has shown that Dr. Colmenares' treatment notes and letter opinion which post-

date the ALJ's decision are "material." *See Foster,* 279 F.3d at 357.

Finally, plaintiff has shown "good cause" for his failure to submit the evidence that post-

dates the ALJ's October 2011 decision. Dr. Colmenares' subsequent treatment notes were not

available prior to the ALJ's decision, and Dr. Colmenares had not had the opportunity to assess

plaintiff in her capacity as a treating psychiatrist prior to the ALJ's decision. Accordingly, remand for consideration of this new evidence is warranted.[2]

### 2. The ALJ erred in weighing the medical opinion evidence.

Plaintiff alleges as his second assignment of error that the ALJ erred in determining his mental RFC. Plaintiff specifically alleges that the ALJ erred by crediting findings of mild mental limitations made by mental health sources who examined him in 2008 and discounting the findings of extreme limitations by mental health providers who examined him in 2011. Plaintiff alleges the record clearly shows his symptoms worsened following his release from prison in September 2010. (Doc. 11 at 10-14).

### a. The governing regulations

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling

---

[2] Plaintiff also submitted evidence following the October 2011 ALJ decision but prior to the Appeals Council's decision that is not "new" because it pre-dates the ALJ decision. (Tr. 608-624). For reasons explained more fully below, the evidence is "material" because it includes references to possible sexual abuse of plaintiff by his pediatrician, Dr. Scott Blankenburg, M.D. (Tr. 615, 619, 621). The evidence should therefore be considered on remand under the unique circumstances this case presents.

weight, the ALJ must balance the factors set forth in 20 C.F.R. § 416.927(c)(2)-(6) in

determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d

at 544. These factors include the length, nature and extent of the treatment relationship and the

frequency of examination. 20 C.F.R. § 416.927(c)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In

addition, the ALJ must consider the medical specialty of the source, how well-supported by

evidence the opinion is, how consistent the opinion is with the record as a whole, and other

factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(3)-(6); *Gayheart,*

710 F.3d at 376; *Wilson,* 378 F.3d at 544.

   The opinion of a non-treating but examining source is entitled to less weight than the

opinion of a treating source, but is generally entitled to more weight than the opinion of a source

who has not examined the claimant. *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504, 514 (6th

Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)[3]). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d

873, 875 (6th Cir. 2007)). When deciding what weight to give a non-treating source's opinion,

the ALJ should consider the medical specialty of the source, how well-supported by evidence the

opinion is, how consistent the opinion is with the record as a whole, and other factors which tend

to support or contradict the opinion. *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 416.927(c)).

Because a non-examining source has no examining or treating relationship with the claimant, the

weight to be afforded the opinion of a non-examining source depends on the degree to which the

source provides supporting explanations for his opinions and the degree to which his opinion

considers all of the pertinent evidence in the record, including the opinions of treating and other

examining sources. 20 C.F.R. § 416.927(c)(3).

---

[3] Title 20 C.F.R. §§ 404.1527, 416.927 were amended effective March 26, 2012. The provisions governing the
weight to be afforded a medical opinion that were previously found at §§ 404.1527(d), 416.927(d) are now found at
§§ 404.1527(c), 416.927(c).

Non-medical sources such as teachers are categorized as "other sources" under the regulations. *See* 20 C.F.R. § 416.913(d)(2)). *See also* SSR No. 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006). Although information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2. Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in their professional capacities include how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. *Id.* at *4. *See also Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).

**b. The categorization of Dr. Colmenares and Dr. Staskavich's assessments**

There is some confusion as to the proper categorization of two mental health assessments prepared by Dr. Colmenares and Dr. Catherine Staskavich, Ph.D., in July 2011. Plaintiff suggests these providers are "treating providers" whose opinions are entitled to controlling weight. Plaintiff's counsel sets out the treating physician analysis in connection with the second assignment of error, asserts that "only two physicians of record [Drs. Colmenares and Staskavich] completed RFC assessments," and contends that the ALJ erred by failing to incorporate into the RFC finding the disabling limitations included in those assessments. (Doc. 11 at 10-14). In addition, plaintiff's counsel refers to Dr. Staskavich as a "treating physician" in the reply memorandum.[4] However, it is clear from the record that the treating physician doctrine

---

[4] Dr. Staskavich is a psychologist, not a physician. (*See* Tr. 603). Although not a physician, Dr. Staskavich is an "acceptable medical source" (20 C.F.R. § 416.913(a)), and under appropriate circumstances she could therefore qualify as a "treating source" pursuant to 20 C.F.R. § 416.902 whose medical opinions may be entitled to "controlling weight" in accordance with 20 C.F.R. § 416.927. *See* SSR 06-03p, 2006 WL 2329939, at *2.

does not apply to either the July 2011 assessment of Dr. Colmenares (Tr. 589-96) or the RFC assessment completed by Dr. Staskavich in July 2011 (Tr. 602-03).

Initially, although plaintiff's counsel refers to Dr. Staskavich as a "treating physician" in the reply memorandum (Doc. 21 at 1), counsel acknowledges in the statement of errors that Dr. Staskavich is a one-time examining physician. (Doc. 11 at 12).[5] Further, at the time Dr. Colmenares completed her assessment on July 15, 2011, she had seen plaintiff only one time. (Tr. 589). The treating physician doctrine, which is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once (*Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)), does not apply in this situation. *See Yamin v. Commissioner of Social Sec.*, 67 F. App'x 883, 885 (6th Cir. 2003) (doctor who examined claimant on only two occasions did not have a long term overview of claimant's condition). Accordingly, neither the July 2011 assessment of Dr. Colmenares (Tr. 589-94) nor the RFC assessment completed by Dr. Staskavich (Tr. 602-03) may be entitled to "controlling weight" pursuant to the treating physician doctrine. Instead, the ALJ was required to evaluate these assessments in accordance with the regulations applicable to one-time examining medical sources. *See* 20 C.F.R. § 416.927(c).

### C. The mental health assessments

The ALJ considered several medical and other opinions concerning plaintiff's mental limitations that were rendered between October 14, 2009 and September 23, 2010, which was prior to plaintiff's incarceration. These included the opinion of plaintiff's treating pediatrician from 1991 to 2007, Dr. Blankenburg, which the ALJ gave "great weight." (Tr. 23, citing Tr.

---

[5] Specifically, plaintiff's counsel states that Drs. Swedberg and Rosenthal "are one time examiners, like Dr. Staskavich." (Doc. 11 at 12).

282).  According to the ALJ, Dr. Blankenburg diagnosed physical impairments and ADHD, which he reported was satisfactorily controlled, and Dr. Blankenburg opined plaintiff "would be able to work most jobs." (*Id.*, citing Tr. 282).  The only reason the ALJ gave for adopting this assessment was it was "based on and consistent with findings on examination as well as the medical evidence of record as a whole." (Tr. 23).

The ALJ also gave "great weight" to the December 2007 opinion of plaintiff's special education teacher, Andrea Joyce, that plaintiff generally had no problems acquiring and using information; he had only a slight problem expressing ideas in written form; he had an obvious problem with focusing long enough to finish a task and refocusing to task when necessary and a serious problem working without distracting himself or others, but otherwise no problems attending and completing tasks; and he had no problems interacting with others, moving about and manipulating objects, and caring for himself. (Tr. 23).  The ALJ acknowledged that Ms. Joyce was not an "acceptable medical source," but he found her opinion was "consistent with the substantial medical evidence of record." (*Id.*, citing Tr. 309-13).

The ALJ also gave "great weight" to the February 6, 2008 report of consultative examining psychologist Dr. James Rosenthal, Psy.D. (Tr. 341-346), stating only that the report was "supported by medical signs and findings on evaluation and is consistent with the medical evidence of record as a whole." (Tr. 23).  Dr. Rosenthal diagnosed ADHD and a learning disorder, and he assigned plaintiff a GAF score of 65.[6] (Tr. 345).  Dr. Rosenthal opined that plaintiff's ability to understand, remember, and follow simple one or two-step job instructions

_____

[6] The "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Konecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n. 7 (6th Cir. 2006).  A score of 61 to 70 is indicative of "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Diagnostic and Statistical Manual of Mental Disorders*, p. 34 (4th ed. 2000).

was not impaired; his ability to relate to others was not impaired; and his ability to tolerate the stress of day-to-day employment was mildly impaired. (*Id.*). Dr. Rosenthal also opined there was a significant discrepancy between plaintiff's mother's report of his functional deficits, plaintiff's presentation during the interview, and plaintiff's 2005 and 2007 school records and 2007 doctor reports, which indicated a possibility of malingering. (*Id.*).

State agency psychologists Bonnie Katz, Ph.D., and Todd Finnerty, Psy.D., reviewed the record in May 2008 and April 2009, respectively, and opined that plaintiff's mental impairments were not severe. (Tr. 22, citing Tr. 372-85, 386-99). The ALJ disagreed with their assessment because he found that giving plaintiff "all possible benefit of the doubt," the medical evidence record as a whole, including Dr. Rosenthal's evaluation, supported a finding of severe mental impairments. (Tr. 22). The ALJ nonetheless gave these assessments "some weight." (*Id.*).

Drs. Colmenares and Staskavich rendered their opinions on plaintiff's mental limitations following his release from prison on September 23, 2010. Both of these providers examined plaintiff in July 2011 and opined that plaintiff's mental impairments caused extreme limitations in his activities of daily living; extreme limitations in his social functioning; and extreme limitations in his ability to maintain concentration, persistence or pace. (Tr. 22, citing Tr. 592, 602). They also opined that plaintiff was unemployable due to his mental limitations. (Tr. 593, 603). The ALJ gave these opinions "little weight," finding they were not well-supported by medically acceptable clinical or laboratory diagnostic findings and were inconsistent with other substantial medical evidence as discussed earlier in his opinion. (Tr. 22). The ALJ also found these assessments were based heavily on plaintiff's self-reports and the history provided by his mother, which was inconsistent with the record as a whole. (*Id.*).

A review of the ALJ's decision and the evidence of record shows that the ALJ's decision as to the weight to give the various medical opinions of record is not supported by substantial evidence. The ALJ generally found Dr. Colmenares and Dr. Staskavich's opinions to be inconsistent with other substantial medical evidence in the record, but the ALJ did not discuss the evidence that supported his finding. Neither did the ALJ explain his conclusion that the opinions were unsupported by clinical findings. The Court is unable to discern the basis for this conclusion of the ALJ given that both assessments set forth clinical findings in support of the extreme limitations imposed. (*See* Dr. Calmenares report, Tr. 596: "During psychiatric interview, patient presents clinically with an autistic-like picture, basically non-verbal, no eye-contact, rocks self at times, constantly restless/anxious, squirmy, unable to sustain attention, very guarded, and 'ripping' a magazine into tiny pieces"; Dr. Staskavich report, Tr. 603: "He turned chair to face wall, repeatedly clicked end of pen."). In addition to making no mention of these findings, the ALJ did not explain in what manner the history plaintiff's mother provided to these examining providers was inconsistent with the record as a whole. Finally, the basis for the ALJ's finding that these examiners' opinions were based largely on plaintiff's self-reports is unclear given the indications in the reports that plaintiff was essentially non-verbal during both examinations. (Tr. 589, 603).

Further, the ALJ's decision to give great weight to (1) the 2008 opinion of consultative examining psychologist Dr. Rosenthal (Tr. 341-46), and (2) the 2007 opinion of Ms. Joyce, plaintiff's special education teacher, is not supported by substantial evidence. Ms. Joyce is not an "acceptable medical source" but falls under the category of "other sources." *See* 20 C.F.R. § 416.913(d)(2)). *See also* SSR No. 06-03p, 2006 WL 2329939, at *4. When evaluating Ms. Joyce's opinion, the ALJ referenced only one of the pertinent factors to be considered in

15

assessing the opinion of an "other source," and then only generally by asserting that Ms. Joyce's findings were "consistent with the substantial medical evidence of record." (Tr. 23, citing Tr. 309-13). The ALJ did not explain his conclusion, including how the evidence that post-dates plaintiff's schooling and his incarceration is consistent with Ms. Joyce's findings. Nor did the ALJ explain how the opinion of this source was entitled to greater weight than the more recent opinions of two "acceptable medical sources," the examining psychiatrist Dr. Colmenares and the examining psychologist Dr. Staskavich, which were consistent with each other and sharply contrasted with Ms. Joyce's findings. Because a valid basis for the ALJ's decision to credit Ms. Joyce's findings over the opinions of "acceptable medical sources" of record is lacking, the ALJ's finding that Ms. Joyce's opinion is entitled to "great weight" is not substantially supported.

The ALJ's decision to give "great weight" to Dr. Rosenthal's 2008 opinion finding mild or no functional limitations is likewise not substantially supported by the record. The ALJ decided to credit Dr. Rosenthal's opinion on the sole ground it is "supported by medical signs and findings on evaluation and is consistent with the medical evidence of record as a whole." (Tr. 23). The ALJ did not explain the evidence that supported his finding. Nor did the ALJ balance any of the other factors to be weighed in assessing an examining medical source's opinion when controlling weight is not given to a treating physician. *See* 20 C.F.R. § 416.927(c). The ALJ's failure to explain the basis for his finding leaves the Court unable to discern whether the ALJ took into consideration all of the relevant evidence of record in this case when assessing the weight to accord the opinion of Dr. Rosenthal and the other examining mental health experts, specifically: (1) medical and other evidence showing that plaintiff's mental health deteriorated following his 2009-10 imprisonment; and (2) evidence that discredits plaintiff's treating

16

physician, Dr. Blankenburg, and indicates possible causes of plaintiff's increasingly severe

mental health problems as assessed by Drs. Colmenares and Staskavich.

The record shows that opinions pertaining to plaintiff's mental health that were rendered

before plaintiff's imprisonment contrasted sharply with those rendered after his imprisonment,

with Dr. Rosenthal finding only mild impairments based largely on plaintiff's high school

records and Drs. Colmenares and Staskavich each assessing plaintiff as being extremely

impaired in several areas of mental functioning. (Tr. 595, 602). The disparity in the opinions

was consistent with the testimony plaintiff's mother provided at the ALJ hearing and which the

ALJ acknowledged in his decision. The ALJ noted that plaintiff's mother testified at the

administrative hearing that she had observed a change in plaintiff's behavior following his

imprisonment, describing plaintiff as "increasingly withdrawn and nonverbal after his release

from prison." (Tr. 20). Specifically, plaintiff's mother testified that following his release from

prison, plaintiff was "severely withdrawn. He was very small. He couldn't talk a lick. He

couldn't get it out . . . When he came home, he stared. He cut more. He was not in touch. He

would sit with his back to his wall, frequently turning his head." (Tr. 662). In addition, the June

2011 intake notes from Butler Behavioral Health Services, Inc. report that plaintiff "suffered [an]

attempted rape while in prison" and that he was "traumatized in jail[.]" (Tr. 584-85). Yet, the

ALJ failed to consider the possibility that plaintiff's prison experience adversely affected

plaintiff's mental health and explained the discrepancy between the reports issued prior to

plaintiff's incarceration and the more recent post-incarceration reports.

In addition to failing to consider whether plaintiff's condition may have deteriorated

while in prison, the ALJ ignored evidence of record indicating that plaintiff's treating

pediatrician, Dr. Blankenburg, was convicted and sent to prison in 2009 for sexually molesting

patients and that plaintiff may have been a victim of Dr. Blankenburg.  Plaintiff's mother

testified at the ALJ hearing that plaintiff had stopped seeing Dr. Blankenburg because the

pediatrician was the target of a criminal investigation and was eventually sent to jail.  (Tr. 661).

The June 2011 intake notes from Butler Behavioral Health Services, Inc., state: "Patient also has

reportedly been sexually abused by his long-time pediatrician (Dr. Blankenburg) - who is now in

prison for sexually-molesting multiple patients."  (Tr. 585).  The Commissioner acknowledges

that Dr. Blankenburg's medical license was revoked in 2009 due to child molestation charges.

(Doc. 17 at 10, n. 3).  Yet, the ALJ did not acknowledge in his decision that plaintiff's long-time

pediatrician was a convicted felon and child molester who lost his license to practice medicine as

a result of crimes perpetrated against his patients.  Instead, the ALJ gave "great weight" to Dr.

Blankenburg's opinion that plaintiff was not disabled.  (Tr. 23).  The ALJ's decision was not

reasonable, particularly in light of evidence in the record that Dr. Blankenburg may have

sexually molested plaintiff.

The Commissioner argues that there is no evidence to suggest that Dr. Blankenburg's

"crimes perpetrated on other children" had any connection to his medical opinion that plaintiff

could work.  (Doc. 17 at 10).  Insofar as the Commissioner suggests that Dr. Blankenburg's

criminal activity is immaterial to the outcome of this matter, the Court vehemently disagrees.

The intake notes indicate that Dr. Blankenberg may have sexually assaulted plaintiff, which

could have caused the deterioration in plaintiff's mental condition, but the evidence was never

mentioned by the ALJ.  Dr. Blankenburg's criminal activity is also of critical importance to the

outcome of this case because the ALJ discounted the severity of plaintiff's mental impairments

based in part on the absence of a history of mental health treatment (Tr. 21), which the record

indicates is directly attributable to Dr. Blankenburg.  According to testimony given by plaintiff's

18

mother at the ALJ hearing, despite signs that plaintiff's mental condition was worsening, Dr.

Blankenburg recommended against mental health treatment with another provider while plaintiff

was under his care. (Tr. 661).  Given indications in the medical record that Dr. Blankenburg

may have been sexually abusing plaintiff at the time he recommended against psychiatric

treatment for him, the ALJ's reliance on plaintiff's failure to seek mental health treatment as a

basis for discounting the severity of plaintiff's mental impairments was unreasonable and

unjustified.

      For these reasons, the ALJ failed to weigh the medical opinions of record in accordance

with the requirements of 20 C.F.R. § 416.927(c).  The ALJ did not explain why he believed the

opinions of Drs. Colmenares and Staskavich were not supported by their findings and were

entitled to less weight than the other medical opinions of record and the opinion of Ms. Joyce, an

"other source."  There is no indication that the ALJ considered evidence that is relevant to the

extreme discrepancies between the opinions issued by the mental health sources who examined

plaintiff prior to and following his incarceration, including evidence related to plaintiff's

incarceration and the suspected abuse by his pediatrician, Dr. Blankenburg.  The ALJ instead

unduly focused on plaintiff's pre-incarceration mental health history and ignored the reality of

plaintiff's circumstances and worsening mental condition as documented by examining mental

health experts.  Accordingly, the ALJ's decision is not supported by substantial evidence.  *See*

*Rogers v. Comm'r of Soc. Sec.*, 486 F.2d 234, 249 (6th Cir. 2007) (disability determinations must

be made based on the record in its entirety to help ensure that focus is not unduly placed on one

aspect of the claimant's history when that aspect does not reasonably "portray the reality of the

claimant's circumstances.").  The third assignment of error should be sustained.

### 3. Pervasive developmental disorder

Plaintiff alleges as his first and fourth assignments of error that the ALJ erred by failing to find he suffers from the "severe" impairment of pervasive developmental disorder as diagnosed by the mental health sources who examined him in July 2011, and the ALJ further erred by failing to find that the impairment is of Listing level severity. (Doc. 11 at 8-10, 16-17). Because these two assignments of error are related, the Court will consider them together.

In making his Listing argument, plaintiff specifically relies on Listing 12.10(A)(2)(B)(1)-(3), which describes pervasive developmental disorder as:

> Characterized by qualitative deficits in the development of reciprocal social interaction, in the development of verbal and nonverbal communication skills, and in imaginative activity. Often, there is a markedly restricted repertoire of activities and interests, which frequently are stereotyped and repetitive.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
> A. Medically documented findings of the following:
> . . . .
>
> 2. For . . . pervasive developmental disorders [other than autism], both of the following:
> a. Qualitative deficits in reciprocal social interaction; and
> b. Qualitative deficits in verbal and nonverbal communication and in imaginative activity;
> AND
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

In rendering his decision, the ALJ expressly rejected the diagnosis of pervasive developmental disorder made by two examining mental health providers, Drs. Colmenares and Staskavich, because he found the diagnosis was based on "faulty information": specifically, (1)

20

plaintiff's presentation, and (2) plaintiff's mother's report of his history, which the ALJ found

was inconsistent with the record. (Tr. 17, citing Tr. 583-596, 599-603). In addition, the ALJ

determined that plaintiff's mental impairments, considered singly and in combination, did not

meet or medically equal the criteria of the Listings. (Tr. 17-18). The ALJ evaluated plaintiff's

mental impairments under Listing 12.02 (organic mental disorders). The ALJ determined that

the Listings for organic mental disorders were not met because plaintiff has only mild restriction

in activities of daily living; moderate difficulties in social functioning; and moderate difficulties

with regard to maintaining concentration, persistence or pace; and he has experienced no

episodes of decompensation which have been of an extended duration. (Tr. 18). The ALJ

determined that paragraph C of Listing 12.02 is likewise not met. (*Id.*).

　　　In deciding to reject the diagnosis of pervasive developmental disorder made by the

examining psychiatrist Dr. Colmenares and examining psychologist Dr. Staskavich, the ALJ did

not discuss the nature of this disorder, the symptoms, or the clinical findings made by Drs.

Colmenares and Staskavich in support of the diagnosis. Thus, it is not clear from the ALJ's

decision what aspects of these diagnoses he believed were unsupported by the record. If plaintiff

suffers from this severe impairment, the ALJ must determine whether the impairment meets or is

equivalent in severity to the Listing. *See* 20 C.F.R. § 416.920(d)(2). Thus, on remand the ALJ

must conduct a proper analysis of whether plaintiff suffers from the severe impairment of

pervasive personality disorder and, if so, whether the impairment meets or is equivalent in

severity to the Listing.

### 4. The credibility finding

　　　Plaintiff alleges as his third assignment of error that the ALJ erred in assessing his

credibility; specifically, the ALJ erred by relying on records and school reports that pre-date his

incarceration despite his mother's reports and evidence that plaintiff's mental condition deteriorated following his incarceration. (Doc. 11 at 14-15). Plaintiff further alleges that the ALJ erred by relying on the records of plaintiff's pediatrician, a convicted child molester, to discount plaintiff's credibility. (*Id.*). The Court agrees and finds for the reasons stated above that the ALJ's credibility finding, which failed to take into consideration evidence of plaintiff's deteriorating mental condition, is not supported by substantial evidence and is not entitled to deference here. *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2012) (although the ALJ's credibility determination is entitled to deference, it must be supported by substantial evidence). Plaintiff's third assignment of error should be sustained.

### 5. Remand for further proceedings

In conclusion, the ALJ's findings are inadequate to allow the Court to conclude the Commissioner's decision is supported by substantial evidence. The agency's regulations require that "all determinations be made based upon the record in its entirety." *Rogers*, 486 F.3d at 249 (citing *Houston v. Sec'y of Health & Human Servs.,* 736 F.2d 365, 366 (6th Cir. 1984)). The ALJ failed to make his determinations in light of the record as a whole. Instead, the ALJ ignored material evidence and focused on pre-incarceration records which did not adequately "portray the reality of [plaintiff's] circumstances." *Id.*

The Court finds that a remand of this matter is warranted under both Sentence Four and Sentence Six of 42 U.S.C. § 405(g). Sentence Four of § 405(g) provides, "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." A Sentence Four remand is appropriate where "all essential factual issues

have not been resolved and there is no clear entitlement to benefits on the record" as it presently

stands. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

> Sentence Six of § 405(g) provides in full:

> The court may, on motion of the Commissioner of Social Security made for good
> cause shown before the Commissioner files the Commissioner's answer, remand
> the case to the Commissioner of Social Security for further action by the
> Commissioner of Social Security, and it may at any time order additional
> evidence to be taken before the Commissioner of Social Security, but only upon a
> showing that there is new evidence which is material and that there is good cause
> for the failure to incorporate such evidence into the record in a prior proceeding;
> and the Commissioner of Social Security shall, after the case is remanded, and
> after hearing such additional evidence if so ordered, modify or affirm the
> Commissioner's findings of fact or the Commissioner's decision, or both, and
> shall file with the court any such additional and modified findings of fact and
> decision, and, in any case in which the Commissioner has not made a decision
> fully favorable to the individual, a transcript of the additional record and
> testimony upon which the Commissioner's action in modifying or affirming was
> based.

42 U.S.C. § 405(g).  In a Sentence Six remand, the Court does not rule on the correctness of the

administrative decision as in a Sentence Four determination. *Faucher,* 17 F.3d at 174 (citing

*Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).  Instead, "the court remands because new evidence

has come to light that was not available to the claimant at the time of the administrative

proceeding and that evidence might have changed the outcome of the prior proceeding."

*Melkonyan*, 501 U.S. at 98.  "[F]ollowing a sentence six remand, the Secretary must return to the

district court to 'file with the court any such additional or modified findings of fact and decision,

and a transcript of the additional record and testimony upon which his action in modifying or

affirming was based.'" *Id.*

A Sentence Four remand rather than an outright reversal for an award of benefits is

appropriate here because all essential factual issues have not been resolved in this matter, nor

does the current record adequately establish plaintiff's entitlement to benefits as of the date his

SSI disability benefits were terminated. *See Faucher*, 17 F.3d at 176.  A Sentence Six remand is

also warranted because new evidence has come to light that may have changed the outcome of the prior administrative proceeding. *See Melkonyan*, 501 U.S. at 98. The case may be remanded on both grounds, in which event district court jurisdiction over the case would continue after entry of the remand judgment. *See Jackson v. Chater*, 99 F.3d 1086, 1097-98 (11th Cir. 1996).

Accordingly, it is recommended that this matter be reversed and remanded under Sentence Four of § 405(g) for further proceedings consistent with this decision, including a determination of the weight to be accorded the opinions of the mental health sources and an explanation on the record therefore; a determination of whether plaintiff suffers from the severe impairment of pervasive developmental disorder and whether this impairment meets or equals the Listing; reassessment of plaintiff's credibility; and obtaining of additional medical testimony and vocational evidence as warranted.

It is also recommended that this matter be remanded under Sentence Six of § 405(g) for consideration of additional evidence submitted by plaintiff following the ALJ's decision.

## IT IS THEREFORE RECOMMENDED THAT:

1. This case be REVERSED and REMANDED for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

2. This case be REVERSED and REMANDED for further proceedings pursuant to Sentence Six of 42 U.S.C. § 405(g).

Date: 2/5/14

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GUY WATSON,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-105
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

25